BERANEK, Judge.
Appellants, members of the City Commission of Lake Worth, appeal the final judgment entered in a breach of contract action filed by the appellees, Gulfstream Ventures, Inc., and George Michael. In December, 1976, the parties signed a lease agreement for the operation of a restaurant concession in the clubhouse of the Lake Worth Municipal Golf Course. The lease was for a term of five years with two additional five-year option periods. On the strength of this lease, appellees financed the endeavor through two bank loans plus other capitalization, including the use of personal assets. They invested heavily in the renovation of the clubhouse, purchased equipment, and hired 'a European chef. The restaurant, known as The Moorings, opened in the early part of 1977.
Questions of fact existed as to whether the appellees fulfilled all the terms of the lease agreement. On January 16, 1977, at the urging of a group of angry golfers attending a Commissioners’ meeting, the Commissioners moved to cancel the lease. The mayor initially ruled that the motion was out of order. The City attorney also warned against taking action without notice to the lessee. Nevertheless, the Commissioners voted 4-1 to cancel the lease. The City’s action received substantial publicity in the local news media which adversely affected the restaurant. The appel-lees sought injunctive relief barring the City from immediately terminating the lease. The injunction was granted and remained in effect until the restaurant closed in September of 1978. Appellees filed their suit alleging damages for breach of contract and eventually proceeded to trial after extensive discovery.
The factual statements in the opposing briefs are in substantial conflict; it is hard to believe that counsel are describing the same trial. What is apparent from the transcript is the existence of a basic conflict between use of the facility as a commercial restaurant and its use as a golf club open to the public and to “card” members. There was obvious hostility against the restaurant operation by a substantial number of golfers. The evidence was in sharp conflict but there was clearly a factual basis for concluding that many users of the golf course were opposed to the restaurant from the beginning and took bizarre measures to make operations difficult if not impossible. Appellees presented evidence of vandalism and harassment such as rolls of toilet paper being stuffed into toilets and frozen bluefish being found in a punch bowl. (The restaurant served no bluefish or frozen fish.) After the vote to cancel the lease, road signs barring entry mysteriously appeared on the only access road. Complaint to the City council by persons using the golf course caused City council members to be *1338 come embroiled in the controversy. On appeal it is asserted that there was no direct evidence of City involvement in the harassment but this was basically a jury issue. Also, no argument is made that the evidence of harassment was inadmissible.
Both parties presented complex and extensive evidence as to damages. Plaintiffs introduced a balance sheet over six feet long describing the ten-month operation of the restaurant. This document contained thousands of entries and was subject to varied expert interpretations. After a six-day trial, the jury awarded $430,000 to Gulf stream Ventures representing damages for lost future profits and $2500 to Michael.
Appellants raise six points on appeal primarily concerning jury instructions and damages. On the issue of instructions, appellants contend that three of the jury instructions were misleading in that they lacked explanatory definitions of certain terms, they improperly stated the law, and they did not address jury issues. A reading of the transcript reveals that appellants’ objections to two of the instructions were on different grounds from those asserted on appeal and their objection to the third was a mere general objection. Furthermore, no curative or explanatory instructions were requested by appellants. We find that appellants have not demonstrated reversible error with respect to the jury instructions.
As to appellants’ various arguments on damages, we feel compelled to comment on only one — the issue of present money value. Appellants maintain that the verdict was excessive because the jury did not reduce the award to present money value. As noted above, both parties presented the testimony of numerous witnesses and extensive documentary evidence on the issue of damages. However, not one word of testimony or argument was given concerning present money value. At the behest of appellants, the jury was instructed as follows: “Any amounts which you allow for future damages ... should be reduced to their present money value and only the present money value of such amounts should be included in your verdict.” Appellants did not request nor provide any explanation of how to reduce damages to present money value. The verdict form, which was submitted by appellants, did not mention present value and merely provided a blank to be filled in for the “total amount of any damages sustained by plaintiffs.”
Only after the jury returned a verdict for $430,000 did appellants attempt to introduce an affidavit of their accountant in a motion for a new trial. This affidavit, upon which the court correctly refused to rely, detailed the calculations required to arrive at present money value. According to the affidavit, appellants argued the present money value of the award should be $117,-000. It is unfortunate that appellants called the same accountant as a witness at trial and failed to question him for the jury’s benefit on an issue which resulted in an award differential of over $300,000. The affidavit explaining the calculations was hardly simplistic. It made reference to published tables constructed so that one need not work out the present value on a year-by-year basis. Further, the interest rate was a key factor in any formula used. Appellants never apprised the jury of this interest rate. How did appellants expect the jury to arrive at appellant’s interpretation of present money value without the charts, a formula, or an interest rate?
Appellants urge us to follow Pinillos v. Cedars of Lebanon Hospital Corporation, 403 So.2d 365 (Fla.1981). In that case, the jury was given a formula to aid it in making the appropriate reductions. At a post-trial hearing, the defendant hospital, which had failed to produce any evidence at trial on the method of reducing the future damages to present value, contended that the formula was incorrect and produced expert testimony of the proper formula. The trial court then entered judgment for this amount rather than for the amount which the jury computed using the erroneous formula. The Supreme Court held that plaintiffs should have been granted a new trial on damages because the trial court erred in making the reductions based on a post-trial formula. The present case is distinguisha *1339 ble. Here, the jury was given no information on the meaning of present money value much less a formula to use in computation. The only argument is that the amount of the verdict is very close to the amount suggested to the jury by plaintiffs’ counsel. From the actual verdict it is impossible to tell that the jury did not attempt a reduction to present value. The instruction given by the trial court on present worth was correct and was all either appellees or appellants requested. Even in closing argument, appellants did not explain or even mention present worth or value to the jury. The appellants were not required to present evidence on present value but, in the absence of evidence or other explanation under the complex facts here, they substantially weaken their ability to urge error on appeal in this respect. There is nothing here which shows the jury did not follow the court’s minimal instruction as best they could in reducing damages to present value.
We have reviewed the other points argued on appeal and find no merit in them. Accordingly, we affirm.
AFFIRMED.
LETTS, C. J., and DOWNEY, J., concur.